RECEIVED
IN ALEXANDRIA, LA

FEB 12 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MARTCO LIMITED PARTNERSHIP | CIVIL ACTION NO. 04-673 |
| versus | JUDGE TRIMBLE |
| WELLONS, INC. D/B/A WELLONS USA | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are two post-judgment motions for relief filed by plaintiff and defendant. Plaintiff's motion [R. 153] asserts that the court's final judgment in this case [R. 152] contained numerous errors of law and, accordingly, asks that judgment as a matter of law be entered in its favor. In the alternative, plaintiff requests that the court vacate its prior judgment and grant a new trial in this matter. Defendant's motion for judgment as a matter of law and/or alternatively for a new trial [R. 154] was filed "out of an abundance of caution" and to preserve certain arguments in the event of an appeal and does not suggest errors of law within the court's prior judgment.

For the reasons expressed herein, the court, after careful consideration of the law and arguments presented by the parties, finds that plaintiff's motion for judgment as a matter of law should be GRANTED in part and DENIED in part and further finds that plaintiff's motion for new trial should also be DENIED.

The court also finds that defendant's motion for judgment as a matter of law should be DENIED as moot.

1

I.  BACKGROUND

A.  **Relevant Procedural History**

This case was tried by jury beginning on May 21, 2007 and concluding on May 31, 2007. Counsel for all parties were present and both plaintiff and defendant entered evidence in support of their views of the case. At the conclusion of plaintiff's evidence, defendant moved for directed verdicts on the issues of fraud, detrimental reliance, breach of contract, ordinary negligence, gross negligence and redhibition. The court granted defendant's motion on the issue of fraud and denied the motion as to detrimental reliance, breach of contract, ordinary negligence and gross negligence for reasons orally assigned. The court took the motion under advisement as to the issue of redhibition.[1] Defendant reurged its oral motion for directed verdict at the close of all evidence in the case. All the issues raised by defendants' oral motion, except fraud as to which the court ordered a directed verdict, were submitted to the jury.

The jury rendered its verdict on May 31, 2007, which declined to rescind the contract between the parties, but found that defendant breached this contract. The jury also found that defendant breached the contract and that this breach caused damages and apportioned fault in the amount of twenty percent (20%) to plaintiff and eighty percent (80%) to defendant. The jury found, additionally, that defendant was not grossly negligent and further found that the system designed, manufactured and installed by defendant contained a redhibitory defect, but that this defect, if known before purchase, would not have induced plaintiff to forgo the transaction. Finally, the jury awarded plaintiff the sum of $4.395.858.00 for lost productivity, earnings and profits and the sum of $296,600.00 for repair costs paid by plaintiff to third parties.

---

[1] See oral motions and order entered into record on 5/23/2007 and 5/30/2007.

As to defendant's counterclaim for unpaid invoices, the jury found that defendant was due the sum of $649, 059.91.[2]

Pursuant to a June 8, 2007 telephone conference which included counsel for all parties, defendant filed a renewed motion for directed verdict or judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b).[3] After consideration of the law and arguments submitted by the parties on the issues raised, the court issued a final judgment[4] which granted defendant's motion as to the issue of redhibition and applied the contractual provisions to plaintiff's jury award. In response, plaintiff and defendant filed the instant motions for post-judgment relief.

**B.     Applicable Standards**

Plaintiff's motion is styled as a request for relief under Fed. R. Civ. P. 50 or, alternatively, under Fed. R. Civ. P. 59. The court finds that, since plaintiff did not motion the court for directed verdict at any point during the trial of this case, no relief under Fed. R. Civ. P. 50 is available to it at this time. Accordingly, the court will consider plaintiff's motion as a request for relief under Fed. R. Civ. P. 59, requesting an amendment to our prior ruling or, alternatively, a new trial.

District courts have considerable discretion in deciding a motion under Fed. R. Civ. P. 59(e).[5] A motion for amendment of judgment may be granted on the basis that such amendment

---

[2]Jury verdict [R. 117].

[3]R. 118.

[4]Final judgment [R. 152] of 11/19/2007.

[5]Lavespere v. Niagra Machine & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), overruled on other grounds, Little v. Liquid Air Corp., 37 F.3d 1067 (5th Cir. 1994).

is necessary to correct manifest errors of law or fact upon which the judgment is based. Such motion may be granted in order that newly discovered or available evidence may be considered. A court may also grant a motion under Rule 59(e) to prevent a manifest injustice or to accommodate an intervening change in controlling law.[6] Amendment of judgment is an extraordinary remedy and should be used sparingly.[7]

## II.     ANALYSIS

As above, plaintiff's motion alleges many errors in the court's prior ruling. Each will be considered below.

### A.     Classification of Contracts

It is well settled that the same standard applies to a district court's consideration of both motions for directed verdict and motions for judgment notwithstanding the verdict (hereinafter "JNOV").[8] In considering either such motion, the court must view the evidence in the light most favorable to the non-moving party.[9] If after doing so, the court is convinced that no reasonable jury could have arrived at a contrary verdict, the motion should be granted. The court notes that

---

[6] Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990); In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002).

[7] Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004), citing Clancy v. Employers Health Ins. Co., 101 F.Supp.2d 463, 465 (E.D.La. 2000), citing 11 Charles A. Wright, Arthur R. Miller and Mary K. Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995).

[8] Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp., 986 F.2d 1463 (5th Cir. 1993.

[9] Neely v. Delta Brick & Tile Co., Inc., 817 F.2d 1224, 1225 (5th Cir. 1987), citing Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997).

this standard is an express departure from the "scintilla rule," wherein a court is required to uphold a jury verdict unless "there is a complete absence of probative facts to support" such verdict.[10] The Fifth Circuit, in adopting the "reasonable jury" standard, acknowledged the district court's discretion beyond the limitation of the scintilla rule.[11]

Plaintiff's motion asserts that this court committed legal error in its finding that the contracts at issue between the parties were contracts to build, rather than contracts of sale. Specifically, plaintiff points out the court's finding that "...the contracts at issue are most accurately characterized as contracts to build..."[12] Plaintiff alleges that, in granting defendant's motion for JNOV, the court neglected the above standard and impermissibly reversed the jury's sound verdict on the issue of redhibition.[13]

In support of its argument for amendment to the court's judgment in this case, plaintiff cites eight (8) pieces of information which it contends were offered to the jury and fully support the jury's finding that the object of the contracts at issue was a sale, rather than construction. Having reviewed the trial transcript in this case, the court must disagree for two reasons.

First, the jury was never presented with the issue. The jury instructions do not ask the jury to determine whether or not the parties negotiated contracts to build or to sell. Instead, the jury was asked whether or not a redhibitory defect was present in the thermal oil heating system built for Martco by Wellons. Plaintiff did not ask for the inclusion of this instruction, or for a

---

[10] Neely, supra, 817 F.2d at 1225.

[11] Id.

[12] Memorandum ruling [R. 151] of 11/19/2007 at p. 12.

[13] Memorandum in support of post-judgment motion [R.156] at pp. 2-3.

special verdict question on the issue, even after defendant's original and renewed motions for directed verdict, wherein defendant disclosed its belief that the nature of the contracts at issue prevented the application of rehibition in this case.[14] In this way, it appears that the parties failed to present the underlying issue altogether. The court does not find, however, that this failure necessitates a new trial, as discussed below.

Second, the court does not find that plaintiff's acclaimed evidence on this issue was sufficient to enable a reasonable jury to find that the contracts at issue were contracts of sale and, accordingly, the court would still have reversed the jury's finding on that issue, had it been put to the jury at the close of all evidence. Plaintiff cites contractual terminology such as "Standard Conditions of Sale," "Sales Contract," "vendor," "buyer," and "sales price" as evidence that the transaction was, indeed, a sale.[15] Plaintiff also asserts that the bifurcation of the invoices into equipment and installation evidence, at least in part, a sales contract.[16] Lastly, plaintiff points out the contracts' reservation of right in redhibition, as well as testimony by Jonathan Martin that redhibition was one of plaintiff's theories of recovery in this case.[17]

Accepting each of these claims of evidentiary basis as true, the court still finds that there is an insufficient basis for a reasonable jury, were it presented with this issue, to find that the true nature of the contracts was an obligation to give, rather than to do. The contractual terminology

---

[14]See trial transcript at pp. 623, et seq. (defendant's original oral motion for directed verdict) and 1175, et seq. (defendant's renewed oral motion for directed verdict).

[15]Memorandum in support of motion [R. 156] at pp. 3 - 4.

[16]Id.

[17]Id.

cited by plaintiff simply does not describe what is contemplated by these contracts – the construction of a thermal oil heating system which was not a product unto itself, but rather, an additional component integrated into a larger existing manufacturing operation. Further, the testimony adduced at trial clearly indicates that, even though a portion of the invoices contemplate delivery of equipment, this equipment was designed and fabricated by defendant for plaintiff's use.[18] Therefore, as we stated in our prior ruling, even this ancillary obligation to give was governed by an overarching obligation to do. Finally, the court rejects the notion that a written reservation of rights which do not exist can transform the governing obligation of a contract.

It is the duty of the court in this particular case to carefully examine the contracts at issue in order to determine the true governing object thereof.[19] In addition to the reasoning above, we also recall our prior reasoning wherein we applied the three-part test employed by the Louisiana Third Circuit Court of Appeal in <u>Duhon v. Three Friends Homebuilders Corp.</u>[20] As our prior ruling states, the court finds that plaintiff had extensive control over the specifications and upgrades to the existing system it sought from defendant. We also find that the parties negotiated the specifics of this project before construction began, as evidenced by the exchange of proposals and meetings held.[21] Lastly, the court finds that plaintiff expected defendant to

---

[18]Trial transcript at p. 209, lines 13 - 17 (testimony by Jonathan Martin of 5/21/07).

[19]7 La. Civil Law Treatise: Obligations § 157 (1975), Litvinoff.

[20]396 So.2d 559 (La. App. 3 Cir. 1981).

[21]Trial transcript at p. 145, lines 11 - 14 (testimony of Jonathan Martin of 5/21/07, describing the exchange of proposals concerning Martco's desired specifications).

employ its own expertise in the design, engineering and installation of the upgrades to its thermal oil heating system. The testimony presented at trial evidences plaintiff's belief that it was negotiating a "turnkey operation" by defendant.[22] Finding, as the court did in Duhon, that the contracts at issue possess the elements of negotiation before the transaction, obligee control over specifications and a vendor obligation to supply not only materials, but also skill and labor to build the object of the contract, we are reinforced in our conclusion.

The contracts at issue are appropriately characterized as contracts to build and plaintiff's motion for amendment of this portion of our prior ruling shall be denied. Accordingly, plaintiff's request for return of purchase price and attorney fees[23] shall also be denied.

### B.    Application of Contributory Negligence

Plaintiff next alleges that the court erred in reducing its award by the twenty percent (20%) contributory negligence allocated to it by the jury on the basis that contributory negligence cannot be a defense in contract suits. In support of this allegation of error, plaintiff cites Merlin v. Fuselier Construction, Inc., in which the Louisiana Fifth Circuit Court of Appeal unequivocally stated that comparative fault is not an available defense to a breach of contract claim.[24] The court finds that plaintiff's argument is correct and we will amend our prior judgment accordingly. Moreover, the court finds that this ruling moots plaintiff's other argument concerning the order in which the contributory negligence allocation and contractual limitation

---

[22] Id., at p. 146, line 18 - p. 147, line 2.

[23] Memorandum in support of motion [R. 156] at pp. 13 - 15.

[24] 789 So.2d 719 (La. App. 5 Cir. 2002).

of liability were applied.[25]

Louisiana law provides that "contracts have the effect of law for the parties..."[26] The contracts at issue in this case state:

> "B.  LIMITATION OF LIABILITY
>
>   1.  SELLER AND PURCHASER EXPRESSLY AGREE THAT SELLER SHALL NOT IN ANY EVENT BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES.
>
>   THE LIABILITY OF WELLONS, INC. ON ANY CLAIM OF ANY KIND, INCLUDING NEGLIGENCE, SHALL IN NO CASE EXCEED TWENTY-FIVE PERCENT (25%) OF THE PRICE PAID BY THE PURCHASER FOR THE EQUIPMENT."[27]

As expressed in this court's prior ruling, we find that the above limitation of liability remains in effect between the parties to this suit given the jury's finding that the contracts at issue should not be rescinded on the basis of error.[28] Therefore, we are convinced that our prior judgment should also be amended to conform to the limitation of liability above. In consideration of these findings, the court shall amend its prior judgment to include an award to plaintiff in the full amount of $477,785.32, which constitutes twenty-five percent (25%) of the $1,011,141.26 purchase price paid by plaintiff, unaffected by contributory negligence.

---

[25] See memorandum in support of motion [R. 156] at pp. 4 - 7.

[26] La. Civ. C. Art. 1983.

[27] See, for example, "Exhibit C" to plaintiff's memorandum in opposition to defendants' post-verdict, pre-judgment motion [R. 135] at "Appendix B," p. 20.

[28] Jury verdict form [R. 117] at p. 1, question 1.

### C. Pre-judgment Interest

Plaintiff asserts that the court committed another error in awarding defendant pre-judgment interest at the rate of "prime plus two percent (2%) at the U.S. Bank of Oregon computed as of the due dates of all unpaid invoices..."[29] Plaintiff alleges that the issue of pre-judgment interest was not raised during trial and that the court's award of pre-judgment interest at this rate was a "deprivation of Martco's constitutional rights of due process and trial by jury."[30] Plaintiff also points out the following contractual provision:

"Buyer agrees to pay...

      \*           \*           \*

    4.13    25%    OF SALES PRICE upon completed installation of equipment according to all performance specifications and VENDOR's performance guarantees. At this time, VENDOR shall also furnish a letter outlining that the warranty period has begun and advise upon what specific date in the future the warranty will expire."[31]

Plaintiff now asserts that defendant never provided the warranty letter contemplated in this provision and, as such, the final twenty-five percent (25%) of the purchase price was not liquidated at the time it received defendant's invoices.

Defendant answers this argument by pointing out that the jury in this case upheld the contracts at issue. The court agrees that the jury's finding concerning the validity of the contract, as discussed above, indicates the operation of this contractual provision providing for pre-

---

[29] Judgment [R. 152] of 11/19/2007.

[30] Plaintiff's memorandum in support of motion [R. 156] at p. 8.

[31] "Contract 8" at WI00214 - 215.

judgment interest between the parties. We are persuaded, however, that plaintiff is correct in pointing out that defendants never issued the letter contemplated by the contract, such as would have triggered the due date of the final twenty-five (25%) of the purchase price. Accordingly, the court finds that, while defendant is entitled to the contractual interest rate, it is only entitled to such relief from July 12, 2004, the date of judicial demand. Accordingly, the court will amend its prior judgment to reflect these findings.

### D. Allocation of Costs

Plaintiff's last assignment of error asserts that the court erred in allocating the costs of the action equally as between the parties. In support of this argument, plaintiff cites Fed. R. Civ. P. 54(d)(1) which states, in part:

> "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs..."

In the court's view neither the plaintiff, nor the defendant can be exclusively characterized as the "prevailing party" under this rule. Many of plaintiff's theories of recovery were rejected by the jury in this case or, as above, by this court in post-trial motion practice. While the jury did make an award to plaintiff in consideration of defendant's breach of contract, we think it important to note that defendant also received an award on its counterclaim. Moreover, the court notes that the rule provides a method for taxation of costs except where other provision is made under those rules or other applicable law and in cases where the court "otherwise directs." Accordingly, the equal apportionment of costs in this case is well within the discretion of this court and its prior judgment will remain as rendered concerning this issue.

### III. CONCLUSION

Having fully considered the law and argument advanced by plaintiff's motion, as well as all rebuttals by defendant, the court finds that the portion of our prior judgment pertaining to redhibition shall remain as previously rendered. The underlying issue of classification of the contracts was never presented to the jury. Further, the court has determined that the evidence presented at trial did not form a legally sufficient basis to enable a reasonable jury to reach a contrary verdict, had it considered this issue.

The court finds that its prior judgment should be amended to provide for an award to plaintiff in the amount of $477,785.32, which constitutes twenty-five percent (25%) of the purchase price paid by plaintiff, per the contracts operating between the parties. This award shall not, however be reduced further by the percentage of contributory negligence apportioned to plaintiff, as the award was given to compensate plaintiff for defendant's breach of contract and we agree with plaintiff that such awards are not subject to contributory negligence defenses.

The court also finds that, while defendant is entitled to the contractually agreed interest rate of "prime plus two percent (2%) at the U.S. Bank of Oregon computed as of the due dates of all unpaid invoices," defendant is only entitled to such relief from the date of judicial demand: July 12, 2004. This is so because defendant failed to provide a letter of completion to plaintiff which would have indicated the start of the warranty period and triggered the due date of the final twenty-five (25%) of the purchase price. The court's prior judgment shall be amended accordingly.

The court shall not amend its prior ruling on the issue of the apportionment of costs in this matter, finding that we were within our discretion to tax plaintiff and defendant equally with

costs under Fed. R. Civ. P. 54(d)(1). The court also finds that defendant's motion, which was merely filed out of caution, were the court to have reversed its prior ruling as to redhibition, should be denied as moot, given our denial of plaintiff's motion as to amendment on that issue.

Finally, given our findings above, the court can find no error such as would necessitate a new trial in this case. Accordingly, plaintiff's alternative request for new trial shall be denied.

Alexandria, Louisiana
February 12, 2008

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE