
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

DEC 0 1 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| MARTCO LIMITED PARTNERSHIP | CIVIL ACTION NO. 04-673 |
| versus | JUDGE TRIMBLE |
| WELLONS, INC. D/B/A WELLONS USA | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment[1] filed by defendant Admiral Insurance Company ("Admiral") in which it seeks summary judgment declaring that the policy it issued in favor of co-defendant Wellons, Inc. ("Wellons") provides no coverage for any claims by plaintiff Martco Limited Partnership ("Martco") against Wellons in this case.[2] Also before the court is a joint cross-motion for summary judgment[3] by Martco and Wellons on the issue of coverage. For the reasons expressed herein below, the court finds that Admiral's motion for summary judgment should be GRANTED in part and DENIED in part and the joint cross-motion for summary judgment by Martco and Wellons should be GRANTED in part and DENIED in part.

---

[1] R. 173.

[2] Admiral's motion also briefly argues the issue of its duty to defend its insured, Wellons, in this case. That portion of Admiral's motion and all opposing arguments are addressed in a separate ruling also issued this day.

[3] R. 202.

## I. BACKGROUND

### A. Relevant Facts

Admiral issued a commercial general liability ("CGL") insurance policy to Wellons with a policy period of September 1, 2002 to September 1, 2003.[4] Martco hired Wellons to design, fabricate and install certain improvements to its existing Wellons wood-fired thermal oil heating system ("The Wellons") located in Martco's oriented strand board ("OSB") plant at Lemoyen, Louisiana, as evidenced by a series of five (5) contracts executed between them.[5] Martco's stated goal in hiring Wellons for these improvements was to increase the thermal oil output of the Wellons to 70MM BTU per hour.[6] Construction of the improvements commenced in late December, 2002 with a planned thirty (30) day shutdown of the plant.[7] The work schedule confected by the parties also called for start-up and resumed production of OSB on January 28, 2003.[8]

Numerous problems arose with the Wellons, resulting in Martco's filing of the instant suit on March 17, 2004, in which Martco alleged breach of contract, invalidity of contract, redhibition, negligence and resulting damages.[9] Martco later amended its complaint in order to

---

[4] Exhibit "A" (policy), "Common Policy Declarations."

[5] Trial Exhibit 471.

[6] Id., at WI00227 (Wellons Contract Proposal No. 7281).

[7] R. 201 at p. 5.

[8] R. 173-12 at p. 2; R. 201 at p. 5.

[9] R. 1.

state claims against Wellons' insurer, Admiral.[10] On April 26, 2007 this court issued an order bifurcating the trial of this matter and providing that Admiral would be allowed to participate in the trial on negligence and damages to the extent it deemed necessary to protect itself as to insurance issues.[11] Martco's claims against Wellons were tried before a jury beginning on May 21, 2007. At the conclusion of plaintiff's evidence, defendants moved for directed verdicts on the issues of fraud, detrimental reliance, breach of contract, ordinary negligence, gross negligence and redhibition. The court granted Wellons' motion as to Martco's fraud claim and took Wellons' motion as to redhibition under advisement. The court denied all other such motions.[12] All issues raised by these motions, except for fraud which was subject to a directed verdict by order, were submitted to the jury.

At the conclusion of the eight (8) day trial, the jury returned its verdict wherein it found that the contracts at issue should not be rescinded on the basis of error or fraud.[13] The jury did find, however, that Wellons breached the contracts and that this breach caused damages to Martco. The jury apportioned fault in the case in the amount of eighty percent (80%) to Wellons and twenty percent (20%) to Martco. The jury rejected plaintiffs' claim for gross negligence, but found that the Wellons heating system designed, manufactured and installed by the defendant contained a redhibitory defect which, if known before purchase, would have induced the plaintiff to forego the transaction. Finally, the jury awarded Martco the sum of $4,395, 858.00

---

[10]R. 26.

[11]R. 87.

[12]See oral motions and order entered into record on 5/23/2007 and 5/30/2007.

[13]See, generally, jury verdict form [R. 117].

3

for lost productivity, earnings and profits and the sum of $296,600.00 for repair costs paid by Martco to third parties. The jury also awarded Wellons the sum of $649, 059.91 on its counterclaim for unpaid invoices.

Pursuant to a June 8, 2007 telephone conference which included counsel for all parties, defendant filed a renewed motion for directed verdict or judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b).[14] After consideration of that motion, the court issued a final judgment[15] which granted Wellons' motion as to Martco's redhibition claim and applied the contractual provisions to plaintiff's jury award. Martco and Wellons each filed a motion for post-judgment relief.[16] The court considered those motions and issued an amended judgment[17] wherein we awarded the sum of $649,059.91 plus interest at the rate of prime plus two percent (2%) at the U.S. Bank of Oregon from the date of judicial demand, less the sum of $477,785.32 plus legal interest thereon from the date of judicial demand, constituting the amount due Wellons on its unpaid invoices. The court apportioned the costs of the trial equally between Martco and Wellons.

Both Martco and Wellons have appealed the court's judgment on the merits and those appeals are now before the U.S. Fifth Circuit Court of Appeals.[18] Admiral filed the instant

---

[14]R. 118.

[15]R. 152.

[16]R. 153, 154.

[17]R. 168.

[18]R. 175, 182.

motion for summary judgment on the issue of insurance coverage.[19] In response to that filing, Martco and Wellons filed a joint motion also seeking summary judgment on the issue of insurance coverage.[20] We address these motions.

## B.    Applicable Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[21]

A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict in favor of the non-moving party.[22] In making this determination, a court must draw all justifiable inferences in favor of the non-moving party.[23]

Once the moving party has shown that "there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine issue of fact for trial.[24] Conclusory denials, improbable references, and legalistic argumentation" are not adequate substitute for specific facts showing that there is a genuine issue

---

[19]R. 177.

[20]R. 202.

[21]Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482 (5th Cir. 2004).

[22]Anderson, supra, at 248.

[23]Id., at 255.

[24]Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

for trial.[25] The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case."[26] If the moving party fails to meet this initial burden, the motion must be denied, regardless of the non-moving party's response.[27] The fact that a party has filed a cross motion for summary judgment does not prevent that party from asserting the existence of genuine issues of material fact necessitating trial in response to the opposing motion.[28]

## II.    ANALYSIS

As a preliminary matter, both parties agree that Louisiana law applies to the insurance policy at issue in this case. We agree and apply Louisiana law below.

The interpretation of an insurance contract presents a question of law, rather than of fact and therefore is an appropriate matter for determination by summary judgment before this court.[29] Under Louisiana law, an insurance policy, like other contracts, constitutes the law between the parties and the general maxims of contract interpretation apply.[30] An insurance

---

[25]SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[26]Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) quoting Celotex, 477 U.S. at 323.

[27]Id.

[28]Bricklayers, Masons and Plasterers Intern. Union of America, Local Union No. 15, Orlando, Florida v. Stuart Plastering Co., Inc., 512 F.2d 1017 (5th Cir. 1975).

[29]Bonin v. Westport Insurance Co., 930 So.2d 906, 910 (La. 2006).

[30]La. Civ. C. Art. 2045; Porter v. American Optical Corp., 641 F.2d 1128 (5th Cir. 1981).

policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."[31] When the wording of an insurance policy is clear and explicit and leads to no absurd consequences, the intent of the parties is considered fully expressed and the policy must be enforced as written.[32] The words used in an insurance policy must be attributed their plain and ordinary meaning except when such words are terms of art and therefore must be attributed their technical meaning.[33]

When a policy contains ambiguous provisions the ambiguity must be resolved by construing the policy as a whole, rather than placing emphasis on one provision above another.[34] A provision contained in an insurance policy which may be given several different meanings must be construed according to the meaning that renders the provision effective, rather than another meaning which would render it ineffective.[35] If ambiguity remains, the court may also interpret the policy by asking how a reasonable purchaser would construe the ambiguous provision at the time of purchase in light of the insurance industry's customs and usages.[36] Use of this doctrine seeks to interpret the policy in such a way that it meets the reasonable

---

[31]La. Rev. Stat. Ann. § 22:654 (2004); In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007).

[32]La. Civ. C. Art. 2046.

[33]La. Civ. C. Art. 2047.

[34]La. Civ. C. Art. 2050.

[35]La. Civ. C. Art. 2049.

[36]Breland v. Schilling, 550 So.2d 609 (La. 1989); Louisiana Ins. Guaranty Ass'n., 630 So.2d 759 (La. 1994).

expectations of the parties.[37]

If any ambiguity remains after application of the reasonable expectations doctrine, such ambiguity shall be construed against the drafter of the policy, the insurer.[38] The insured has the burden of demonstrating that the claims at issue fall within the ambit of the insuring agreement, while the insurer bears the burden of demonstrating that coverage for such claims is barred by operation of one or more exclusions within the policy.[39]

While, as stated above, both Admiral and Martco, joined by Wellons, filed motions for summary judgment as to insurance coverage, we address the arguments, nearly identical in both instances, by the order they are presented in the motion first received, that belonging to Admiral.

Admiral's motion first argues that Martco and Wellons have not carried their burden of proving that Martco's claims trigger coverage under the initial insuring agreement of the policy issued by Admiral to Wellons. In support of this position, Admiral asserts that Martco's pleadings failed to state claims for physical injury to tangible property as necessary for coverage to attach. Specifically, Admiral alleges that claims for recission and breach of contract, breach of obligation, invalidity of contractual clause, detrimental reliance and redhibition cannot constitute claims for property damage. Moreover, Admiral asserts that Martco has not adduced evidence which demonstrates any such injury.

_____

[37]Louisiana Ins. Guaranty Ass'n. v. Interstate Fire & Cas. Co., 630 So.2d 759, 764 (La. 1994), citing Trinity Indus., Inc. v. Ins. Co. of N. America, 916 F.2d 267, 269 (5th Cir. 1990).

[38]La. Civ. C. Art. 2056; Breland v. Schilling, 550 So.2d 609 (La. 1989), citing Salomon v. Equitable Life Assurance Soc'y of U.S., 13 So.2d 329 (La. 1943).

[39]Coleman v. School Board of Richland Parish, 418 F.3d 511, 517 (5th Cir. 1005), citing Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000).

As cited by Martco and Wellons' joint opposition to Admiral's motion, the Louisiana Fourth Circuit Court of Appeals recently considered a similar argument by an insurer. In Stewart Interior Contractors, LLC v. Metalpro Industries, LLC,[40] the court rejected the view that claims for breach of contract and redhibition against the manufacturer of steel beams were merely claims for economic loss and could not be construed as claims for property damage within the scope of commercial general liability insurance. Reasoning ad absurdum, the court pointed out that if such claims could never encompass property damage sufficient to trigger coverage under the initial insuring agreement of a CGL policy, certain common exclusions such as that for "impaired property" would be unnecessary. Accordingly, the court found that, to the extent summary judgment in favor of the insurer was granted by the district court on the basis of inadequate pleading, that judgment must be reversed.

We agree with the conclusion reached in Stewart and find that it is further supported by the substance of La. Civ. C. Art. 2049, which requires courts to read contractual provisions in such a way that renders them effective, rather than unnecessary. The court also agrees with Martco and Wellons' contention that, because liability and damages have already been tried in this bifurcated case, we must look not only at the pleadings, but at the entirety of the evidence presented by the parties and the jury's prior verdict. Our review of the record indicates that Martco has sufficiently pled "property damage" as that term is defined in the policy at issue. Martco's first supplemental and amended complaint[41] clearly alleges loss of use of tangible

---

[40] 07-0251 (La. App. 4 Cir. 10/10/07), 969 So.2d 653.

[41] R. 26.

9

property and property damage caused by Wellons' acts or omissions.[42]

We now turn to Admiral's argument that Martco and Wellons have failed to actually demonstrate physical injury to tangible property so as to trigger coverage under the initial insuring agreement. Recalling, again, the recent appellate ruling in Stewart, we think it important to note, as that court did, that whether or not a plaintiff can demonstrate the trigger of coverage under the initial insuring agreement is and should be an entirely separate inquiry from whether or not such coverage remains after operation of applicable policy exclusions.

Our examination of the record reveals that whether or not certain events occurred is undisputed. For example, Admiral does not dispute that the new expansion tank installed by Wellons imploded[43] or that a circulation pump isolation valve failed,[44] fires developed in the dry bins,[45] a valve stem leaked,[46] more ash than usual was generated by the new Wellons,[47] the computerized control system did not function properly,[48] and wires burnt off the thermocouples.[49] Admiral disputes the cause of these events and whether or not they represent physical injury to tangible property for which coverage is barred by numerous exclusions, but their actual

---

[42]Id., at ¶ 54.

[43]Admiral's combined reply and response [R. 216] at p. 8.

[44]Id., at p. 9.

[45]Id., at pp. 10, 15.

[46]Id., at p. 11.

[47]Id., at pp. 13, 14, 18, 20.

[48]Id., at p. 17.

[49]Id., at p. 19.

occurrence is not genuinely disputed. Thus, it is clear that Martco has demonstrated physical injury to property.

The policy at issue defines "property damage" as

"a.     Physical injury to tangible property, including all resulting loss of use to that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property."

Martco and Wellons assert that, as a result of the property damage cited above, Martco was unable to operate the Wellons and, moreover, its OSB plant for certain periods of time which resulted in lost production, profits and business opportunities. In support of this claim, Martco produced, at trial, several documents which catalog downtime at its OSB plant.[50] Martco and Wellons point to these trial exhibits as evidence of property damage in the form of loss of use which would also trigger coverage under the initial insuring agreement.

Admiral vigorously disputes whether or not the events described above resulted in downtime and whether or not certain other downtime, which they do not dispute the occurrence of, was part of a scheduled outage or, alternatively, occurred before the Wellons was turned over to Martco and put to its intended use.

Considering that portion of the evidence documenting downtime which is undisputed to have occurred, we find that Martco has also demonstrated "property damage" in the form of loss

_____

[50]See Tr. Ex. Nos. 194, 214 and 521.

11

of use sufficient to trigger coverage under the initial insuring agreement. We also find support

for our conclusion in the jury's findings at trial. The jury found that Wellons was negligent in

its construction of the furnace at issue and that this negligence was the legal cause of damages

sustained by Martco, including lost productivity, earnings and profits.[51] These findings indicate

that Martco did demonstrate loss of use at trial. Again, whether or not such loss of use is

excluded from coverage under one or more of the policy's applicable exclusions remains a

separate issue.

Accordingly, we find that Martco and Wellons have carried their burden of demonstrating

"property damage" as that term is defined in the policy at issue.

Admiral next argues that Martco and Wellons have not shown that any "property

damage" was caused by an "occurrence" as that term is defined by the policy and, for this

additional reason, no coverage is triggered under the policy's initial insuring agreement. The

initial insuring agreement of the policy issued to Wellons states:

> "SECTION I – COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY
>
> DAMAGE LIABILITY
>
> 1.    Insuring Agreement
>
>         a.    We will pay those sums that the insured
>                   becomes legally obligated to pay as

---

[51] See R. 151-2 at pp. 5, 7. The court notes that while the jury did award the sum of $4,395,858.00 to Martco for lost productivity, earnings and profits, this award was reduced upon consideration of post-trial, pre-judgment motions filed by both Martco and Wellons. Specifically, the court found that the jury's verdict upholding the validity of the contracts between the parties in this case required application of the contractual provision limiting liability to twenty-five percent (25%) of the equipment purchase price. Id., at pp. 9-10, 15.

damages because of "bodily injury"
or "property damage" to which this
insurance applies.

\*                          \*                          \*

b.     This insurance applies to "bodily injury"
and "property damage" only if:

(1)     The "bodily injury" or "property damage"
is caused by an "occurrence" that takes
place in the "coverage territory";

(2)     The "bodily injury" or "property damage"
occurs during the policy period..."[52]

The policy goes on to define "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."[53] In support of its

argument that any property damage which may be shown was not caused by an "occurrence,"

Admiral cites two Louisiana appellate court decisions in which the courts held that a construction

defect does not constitute an "occurrence" as that term is applied to insurance contracts. In

Swarts v. Woodlawn, Inc.,[54] the court affirmed the ruling of the lower court granting the insurer's

motion for summary judgment on the basis that the policy at issue did not provide coverage for

claims by homeowners for structural damage to their home caused by a cracked slab. The policy

at issue in that case defined "occurrence" in substantially the same way that the policy before us

---

[52] CG 00011001, attached as "Exhibit A" to Admiral's motion. The court notes that Martco has not made any claim for "bodily injury" in this case and, as such, we will limit our consideration to "property damage."

[53] Id.

[54] 610 So.2d 888 (La. App. 1 Cir. 1992).

13

does.[55] Citing Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc.,[56] Bacon v. Diamond Motors, Inc.[57] and Vitenas v. Centanni,[58] the appellate court held that "...under the jurisprudence, there has been no 'occurrence' to trigger coverage under the policy."[59]

Marteo and Wellons' response in opposition asserts that the logic of Swarts and Fredeman has been rejected by more recent jurisprudence from Louisiana courts and by the U.S. Court of Appeals for the Fifth Circuit, applying Louisiana law. The court agrees.

In Riley Stoker v. Fidelity and Guaranty Insurance Underwriters, Inc.,[60] the Fifth Circuit affirmed the district court's finding that certain portions of the arbitration award in that case constituted a damage award for "property damage" caused by an "occurrence" as that term was defined by the policy at issue. Fidelity and Guaranty, the insurer, argued that the property damage alleged was caused by faulty construction and that a number of Louisiana courts had already refused to classify faulty construction as an "occurrence." The court reasoned that, while Louisiana courts had made such findings, those courts did so by incorporating certain common policy exclusions, such as the product, work and failure to perform exclusions, into their examination of the definition of "occurrence."[61]

---

[55] Id., at p. 890.

[56] 497 So.2d 370 (La. App. 3 Cir. 1986), writ denied, 429 So.2d 131 (La. 1983).

[57] 424 So.2d 1155 (La. App. 1 Cir. 1982).

[58] 381 So.2d 531 (La. App. 4th Cir. 1980).

[59] Swarts, 610 So.2d at 890.

[60] 26 F.3d 581 (5th Cir. 1994).

[61] Riley Stoker, 26 F.3d at 586.

In Rando v. Top Notch Properties, LLC,[62] the Louisiana Fourth Circuit Court of Appeals traced the evolution of jurisprudence on the issue of whether or not defective construction may constitute an "occurrence." The policy at issue in that case defined "occurrence" as "'...an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"[63] The court found that the "...clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be accidents and occurrences when they manifest themselves."[64]

As cited above, the policy at issue in the case sub judice defines "occurrence" identically to the policy at issue in Rando. The Admiral's policy further specifies that

> "'[b]odily injury' or 'property damage' will be deemed to
> have been know n to have occurred at the earlies time when
> any insured...
>
> (3)  Becomes aware by any means that 'bodily injury' or
>      'property damage' has occurred or has begun to occur."[65]

It is undisputed that Wellons' employees remained on-site at Martco following the January 28, 2003 start-up and were not dismissed from the premises until December 2003. As above, we have already determined that the jury's verdict, as well as the arguments of the parties on the present motions, confirm that Martco demonstrated that it sustained "property damage"

---

[62]879 So.2d 821 (La. App. 4 Cir. 2004).

[63]Rando, 879 So.2d at 827.

[64]Id., at 833.

[65]CG 00011001, Section I(A)1(d), page 1 of 13.

in the form of loss of use of its OSB plant. Applying the findings of the vast majority of recent Louisiana cases on the issue, we find that this "property damage" was caused by an "occurrence" as that term is defined within the policy issued by Admiral to Wellons. We also find that the "occurrence" is deemed to have occurred during the policy period because the manifestation of "property damage" occurred during the policy period spanning September 1, 2002 to September 1, 2003, during which time Wellons undoubtedly became aware of the "property damage" forming the basis of Martco's claims.

Considering the foregoing, we find that Martco and Wellons have carried their burden of proving that coverage for Martco's claims against Wellons is triggered under the initial insuring agreement of the policy at issue. Specifically, we find that Martco sufficiently pled "property damage" as that term is defined by the policy. Additionally, the jury's verdict in this case, along with the evidence adduced at trial demonstrates that Martco sustained "property damage" caused by an "occurrence" as those terms are defined in Admiral's CGL policy.

We now address Admiral's arguments concerning policy exclusions. Admiral first cites exclusion "a," which states

> "This insurance does not apply to:
>
> a. Expected Or Intended Injury
>
> 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured..."[66]

Admiral also cites Endorsement No. 2[67] which provides

---

[66]CG 00011001, Section I(A)2, page 1 of 13.

[67]AD 08431201.

16

"This insurance does not apply to:

1.     Any damages arising out of or related to
'bodily injury' or 'property damage', whether
such 'bodily injury' or 'property damage' is
known or unknown,

     (a)    which first occurred prior to the inception
date of this policy (or the retroactive date of
this policy, if any, whichever is earlier); or

     (b)    which are, or are alleged to be, in the process
of occurring as the of the inception date of the
policy (or the retroactive date of this
policy, if any; whichever is earlier) even if
the 'bodily injury' or 'property damage' continues
during this policy period..."[68]

Admiral argues that, even if coverage is triggered under the initial insuring agreement of

the policy, exclusion "a" and Endorsement No. 2 act a bar to coverage in this case because

"Martco was aware before the 2003 modifications that the
Wellons Unit could produce ash and sparkler
carryover, causing plugging and provide too high temperature
when overfired or improperly operated, and that the Wellons Unit
was not always able to provide heat sufficient to meet the dryer
demand at high OSB production rates."[69]

Admiral further argues that any knowledge that Martco had of the tendency of the

Wellons to exhibit these characteristics is imputed to Wellons, the insured, because Martco

amended its complaint and filed a direct action against Admiral. Thus, Admiral asserts that both

Martco and Wellons knew of these problems before entering into contracts for the 2003

construction work and that any property damage which also existed prior to 2003 is excluded

_____

[68] Id.

[69] R. 173-12 at p. 26.

17

from coverage as a pre-existing condition and, also, as property damage "expected or intended from the standpoint of the insured."[70]

Martco and Wellons deny that these provisions bar coverage, pointing out that the jury in this case found that Wellons was not guilty of gross negligence. Accordingly, Martco and Wellons assert, there is no evidence that Wellons expected or intended to cause harm to Martco.[71] Moreover, they argue that the exclusion for expected or intended property damage is construed in Louisiana as a bar to coverage only for injury which the insured intended, but not as a bar to coverage for all injury resulting from the insured's intentional acts.[72]

The court agrees and finds that exclusion "a" and Endorsement No. 2 are inapplicable and do not bar coverage. Even if we were to assume, as Admiral suggests, that Martco was aware that overfiring can negatively impact the performance of the Wellons, there is no evidence to suggest that Martco or Wellons intended the damage that occurred to the new Wellons. To the contrary, the contracts before us and the evidence adduced at trial suggest that Martco desired a high-functioning thermal oil heating system and increased production. To that end, Martco sought a new heating system and it is unreasonable to conclude that Martco did so expecting or intending a bad result. Wellons, for its part, was found not to have been grossly negligent in its construction of the new heating system, disclosing a lack of evidence supporting the idea that Wellons expected or intended any property damage.

---

[70]R. 216 at p. 41.

[71]R. 201-3 at p. 36.

[72]Id., at p. 35, citing Alert Centre, Inc. v. Alarm Protection Services, Inc., 967 F.2d 161 (5th Cir. 1992), Breland v. Schilling, 550 So.2d 609 (La. 1989).

Admiral next argues that no coverage exists under the Products-Completed Operations Hazard ("PCOH") in the policy, which is found in the "Definitions" section of the policy and provides

"16.    'Products-completed operations hazard":

    a.    Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.
            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
            (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            Work that may need repair service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."[73]

Admiral cites the Louisiana Supreme Court's recent decision in <u>Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.</u>[74] as proof that "Louisiana courts and the federal district courts of Louisiana have consistently held that insurance coverage for the PCOH applies not to

---

[73]CG 0001 1001, Section V ("Definitions"), p. 12 of 13.

[74]06-1827 (La. 5/22/07), 958 So.2d 634.

the faulty work itself, but to other damage that might arise from the faulty work."[75] In that case, the court took up the issue of whether or not "...a CGL policy containing a "work product" exclusion and a PCOH provision suffers from inherent ambiguity canceling the work product exclusion when the defective work is performed by a subcontractor..."[76] The court relied on the explanation of the PCOH given by Professors McKenzie and Johnson:

> "'Suppose an insured contracted to make and install a sign on a commercial building. After the work was completed, the sign fell due to defective installation, causing damage to the sign, the building's canopy, a parked car, and also bodily injury to a pedestrian. The insurer covering the products-completed operations hazard would cover all claims except the contractor's responsibility to repair and replace the sign, coverage for which would be excluded under the product and work exclusions.'"[77]

The court reversed the appellate ruling and held that the damages at issue were only to the concrete slab itself and, thus, were barred from coverage by the "work product" exclusion. The court found that, had the subcontractor's faulty work resulted in damage to other property besides the slab, those damages would have been covered under the PCOH. The court found no ambiguity between the "work product" exclusion and the PCOH.

Martco and Wellons agree that the PCOH does not provide coverage to any damages to the Wellons itself, but argue that the PCOH does provide coverage for "property damage" to property outside the Wellons system. Specifically, Martco claims that fires within the dryer

---

[75]R. 173-12 at p. 28.

[76]<u>Supreme Services and Specialty, Inc. v. Sonny Greer, Inc.</u>, 958 So.2d at 643.

[77]<u>Id.</u>, at p. 644, citing McKenzie and Johnson, 15 La. Civil Law Treatise (3d ed. 2006), p. 521, fn. 34.

component of the Wellons system activated the deluge system, which soaked the wood flakes within the dryers and rendered them useless when, normally, those flakes would be incorporated into Martco's finished OSB.[78]  Instead, these ruined flakes had to be discarded, resulting in damage to and loss of tangible property which was not part of the Wellons.  Martco also cites the affidavit of Adrian Schoonover, Vice-President of Engineering at Martco, which states that "excessive ash discharge from the Wellons heating unit resulted in damage to ductwork to the dryers" and that "the damaged ducts were a part of the infrastructure of the Martco plant, were not manufactured or installed by Wellons, and were not part of the Wellons equipment or upgrades for the Wellons heating unit."[79]  Finally, Martco points to its downtime after start-up as loss of use "property damage" for which the PCOH also provides coverage.

Admiral attacks these claims on several fronts.  The most central dispute however, is whether or not Wellons' work was "completed" within the meaning of the PCOH.  Admiral claims that the work contemplated by the contracts in this case was never completed because the Wellons system never functioned as intended and because Wellons' employees remained on site at Martco making repairs and changes to the Wellons system.  The court disagrees and finds that the plain and unambiguous language of the PCOH determines when Wellons' work will be considered "completed" for purposes of this coverage.  It is undisputed that start-up of the new Wellons occurred on January 28, 2003.  It is also undisputed that, as contemplated by the contracts between the parties, Wellons' employees remained on site to aid Martco in running the new system and make any repairs or changes that were warranted.  The language of the PCOH

---

[78]R. 201-3 at p. 23.

[79]Affidavit of Adrian Schoonover, Exhibit "A" to R. 201 (joint opposition to motion).

deems this work completed on January 28, 2003 and this court finds no evidence to the contrary.

Examining Martco's three examples of "property damage" to other property, we find that the PCOH does provide coverage for Martco's lost production, profits and business opportunity which resulted from downtime after start-up, as these damages were caused by loss of use after Wellons' work was "completed" for purposes of the PCOH.

The court also finds that, while the PCOH would clearly provide coverage for Martco's claim for loss of its wood flakes which were rendered useless because of fire and water damage, Martco has failed to prove this claim. Specifically, Martco has submitted no evidence of the quantity of wood flakes lost, their value or the specific dates upon which these flakes were lost. Martco presented no evidence to substantiate this claim at trial or in support of its motion for summary judgment. Accordingly, we find that Martco has not carried its burden of proving PCOH coverage for destroyed wood flakes and Admiral is entitled to summary judgment denying coverage for this claim.

As to Martco's final claim, we do not find that Martco has proved any real injury to its ductwork and infrastructure caused by an increase in ash carryover from the new Wellons system. Aside from Martco's assertion that it had to clean the ductwork more frequently, Martco offers no evidence of actual physical degradation to any of its property caused by the additional ash. Accordingly, we do not find PCOH coverage for this allegation of "property damage" and Admiral is entitled to summary judgment denying coverage for this unsubstantiated claim.

Admiral next asserts that exclusion "j" applies as a bar to coverage because Wellons was, as argued above, still performing operations at Martco through February of 2003.[80] The

---

[80]R. 173-12 at p. 30.

exclusion at issue here states:

> "This insurance does not apply to:
>
> \*           \*           \*
>
> j.      Damage to Property
>
> 'Property damage' to:
>
> \*           \*           \*
>
> (5)     That particular part of real property on
>         which you or any contractors or subcontractors
>         working directly or indirectly on your behalf
>         are performing operations, if the 'property damage'
>         arises out of those operations; or
>
> (6)     That particular part of any property that must be
>         restored, repaired or replaced because 'your work'
>         was incorrectly performed on it.
>
> \*           \*           \*
>
> Paragraph (6) of this exclusion does not apply to
> 'property damage' included in the 'products
> completed operations hazard'."[81]

Admiral also asserts that the "work product" exclusion, comprised of exclusions "k"

("Damage to Your Product") and "l" ("Damage to Your Work") act as a bar to coverage for

damage claims concerning the Wellons system itself. The court and, in fact, Martco and Wellons

agree with this conclusion. It is well-settled that CGL insurance policies are not intended to

insure against the risk that the insured will have to replace or repair his own faulty work. Rather,

these policies contemplate coverage for damages to other property which the insured did not

---

[81]CG 00011001 at Section I(2)j, p. 4 of 13.

construct, work on or deliver.[82] Martco and Wellons again argue, however, that they have demonstrated "property damage" to property outside of the Wellons for which coverage is not excluded by the "work product" exclusion. The court, as above, agrees. We find, however, that Martco's claims for payment to third parties to repair or replace Wellons' work are not covered by the PCOH. Recalling our finding above that the PCOH provides coverage for Martco's loss of use claim and damage to tangible property claim because Wellons' work was "completed" for purposes of that provision, we also find that exclusion "j" which generally excludes coverage for "property damage" which occurs while the insured is performing operations and which arises out of those operations, is inapplicable.

Admiral's last argument in support of exclusion of coverage concerns exclusions "m" and "n," which state

"This insurance does not apply to:

\*            \*            \*

m.    '[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of:

    (1)    A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or
    (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

---

[82]Todd Shipyards Corp. v. Turbine Service, Inc., 674 F.2d 401 (5th Cir. 1982); McKenzie and Johnson, supra, at § 198, pp. 554-62.

24

n.    Recall of Products, Work or Impaired Property
Damages claimed for any loss, cost or expense incurred by
you or others for the loss of use, withdrawal, recall,
inspection, repair, replacement, adjustment, removal or
disposal of:

(1)    'Your product';
(2)    'Your work'; or
(3)    'Impaired property';

if such product, work, or property is withdrawn
or recalled from the market or from use by any
person or organization because of a known or
suspected defect, deficiency, inadequacy or
dangerous condition in it."[83]

Admiral argues that exclusion "m," the "business risk exclusion," bars coverage in cases

where the insured provides a product or resources which are necessary to, as here, a plaintiff's

manufacturing process, but which fails to function as contemplated. Martco and Wellons don't

dispute Admiral's interpretation of this exclusion but aver, instead, that coverage for Martco's

claims is provided under the "put to use" exception. Citing <u>Riley Stoker v. Fidelity and Guaranty</u>

<u>Insurance Underwriters, Inc.,</u>[84] Martco and Wellons argue that the loss of use of its OSB plant

caused by the implosion of the Wellons thermal oil tank and various other mechanical failures

discussed above falls within the exception to this exclusion because Wellons' work was

"complete" and the Wellons heating system was "put to use" before these events occurred.

Martco and Wellons also refute Admiral's contention that Martco's loss of use of its OSB plant

was caused by the failure of the system to function as bargained for, rather than a "sudden and

---

[83]CG 00011001, Section I(A)2(m), page 4 of 13.

[84]26 F.3d 581 (5th Cir. 1994).

accidental physical injury" to Wellons' work or product. The court agrees.

In Riley Stoker, the U.S. Fifth Circuit Court of Appeal examined whether or not exclusion "m" barred coverage for loss of use of Riley Stoker's coal-fired steam generators. After declaration of commercial operations, the ball tube mills evidenced defects which led to fires and explosions. These mechanical breakdowns continued until all of the ball tube mills were repaired and/or replaced. As did the court in Riley Stoker, we now find that the mechanical breakdowns which caused the loss of use of Martco's OSB plant constitute "sudden and accidental physical injury" which took place after the Wellons was "put to use." We specifically reject Admiral's argument that the Wellons had not been put to use. Had there been no glitches in the system, Martco would have been able to immediately begin using the Wellons to run its production of OSB. The record discloses no evidence that the parties expected a significant delay in production after start-up. Moreover, the jury found that Martco had a reasonable expectation that it would be producing OSB and that it was prevented from doing so, in part, by Wellons' negligent design and construction of the heating system at the center of this dispute. Accordingly, we do not find that the "business risk" exclusion acts as a bar to coverage in this case.

Admiral does not specify much about its argument in favor of the applicability of exclusion "n," citing only a handful of cases with little explanation. Martco refutes any application of the "sistership" exclusion, arguing that courts generally interpret this as a bar to coverage when a plaintiff claims damages arising out of its need to withdraw an insured's product from its use based on defects reported by others or on that product's removal from

commerce by the insured. Citing <u>Todd Shipyards Corp. v. Turbine Service, Inc.</u>[85] and <u>City of Plaquemine v. North American Constructors, Inc.</u>,[86] Martco and Wellons assert that since there is no evidence of the removal, voluntarily or otherwise, of the Wellons thermal oil heating system from the market, the "sistership" exclusion is inapplicable. The court agrees. Martco's decision to remove a portion of the new Wellons system from use per the recommendation of Mr. Teaford does not constitute the type of removal contemplated by exclusion "n."

### III. CONCLUSION

The court has carefully considered the law and argument cited by both parties in support of and opposition to the pending cross-motions for summary judgment concerning insurance coverage. Our considerations included, necessarily, the evidence and jury verdict of the prior trial of the merits, as well as the briefs and evidence submitted post-judgment. As explained above, this court finds that Martco has adequately pled and demonstrated "property damage" caused by an "occurrence" as those terms are defined and interpreted in the policy and applicable jurisprudence. Applying the manifestation rule, as well as specific language from the initial insuring agreement to the effect that an "occurrence" is deemed to have occurred at the earliest date upon which the insured has notice of the manifestation of "property damage," we find that the occurrence took place within the policy period. Accordingly, we find that Martco and Wellons have carried their burden of demonstrating the attachment of coverage under the initial insuring agreement of the CGL policy at issue.

---

[85] 674 F.2d 401 (5th Cir. 1982).

[86] 95-2467, 95-2495 (La. App. 1 Cir. 11/14/96), 683 So.2d 386.

We find that Admiral has failed to carry its burden of demonstrating the applicability of various exclusions to coverage within the same policy, with one exception. Specifically, we find that exclusion "a," Endorsement No. 2, and exclusion "j," "k," "l," "m," and "n" are inapplicable to Martco's claims.

While we find that Martco and Wellons have demonstrated coverage under the PCOH, we find that they have failed to prove their claims for physical damage to Martco's ductwork and infrastructure and for the destruction of wood flakes, offering no evidence at trial or thereafter to substantiate these alleged losses.

The court has already rendered a judgment in this case and has amended that judgment based on its consideration of post-judgment relief motions from Martco and Wellons. Applying our findings above to the judgment which now stands, we find that the CGL policy provides coverage for the jury's award on Martco's claims for lost productivity, earnings and profits which resulted from loss of use of its OSB plant due to downtime. Accordingly, Martco and Wellons' motion for summary judgment will be granted as to those particular claims and denied in all other respects. Admiral's motion for summary judgment will be granted as to Martco's claims for "property damage" in the form of physical damage to its ductwork and infrastructure caused by excessive ash carryover and loss of tangible property in the form of wood flakes destroyed by fire and water damage. Admiral's motion will also be granted as to Martco's claim for reimbursement for amounts paid to third parties for repair and/or replacement of Wellons' work. Admiral's motion will be denied in all other respects.

The court will issue judgment in accordance with these findings.

Alexandria, Louisiana
November ___1___, 2008
December

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE